ADAM FAUST,

    Plaintiff,

v.

BROOKE ROLLINS, in her official capacity as
United States Secretary of Agriculture,

    Defendant

# COMPLAINT

Plaintiff Adam Faust states his complaint against Defendant Brooke Rollins as follows:

## INTRODUCTION

1. Adam Faust, a dairy farmer from Chilton, Wisconsin, has a simple desire: to receive equal access to programs and benefits offered by the U.S. Department of Agriculture (USDA). Farmers like Mr. Faust face unique struggles due to price fluctuations, steep costs for equipment and supplies, and environmental challenges posed by raising animals, growing crops, and the weather. USDA offers several important programs to address these challenges and hardships.

2. Unfortunately, USDA does not offer many of these programs on an equal footing to all farmers. This lawsuit focuses on three programs that directly impact Mr. Faust. All three programs violate the Constitution's guarantee of equal treatment by discriminating based on race and sex.

a. First, Mr. Faust participates in the Dairy Margin Coverage (DMC) Program to financially bridge the gap between milk prices and the cost of feed. Mr. Faust is charged an annual administrative fee ($100), but minority and female farmers are exempt.

b. Second, Mr. Faust participates in the Loan Guarantee Program, which guarantees a certain percentage of the loan against financial loss. Mr. Faust is eligible for a 90% loan guarantee, while minority and female farmers may receive a 95% loan guarantee.

c. Third, Mr. Faust began working with an engineering firm to create a new manure storage system through the Environmental Quality Incentives Program (EQIP), which helps farmers cover the cost of such projects. Mr. Faust is eligible to receive a reimbursement totaling 75% of his costs, but minority farmers may receive a reimbursement totaling 90% of costs.

3. Unfortunately, this is not new. Mr. Faust experienced similar discrimination in 2021 when the Biden Administration forgave certain farm loans based on race. This Court ruled in favor of Mr. Faust, declaring the program to be unconstitutional race discrimination and entering an injunction. *Faust v. Vilsack*, 519 F. Supp. 3d 470, 478 (2021).

4. As in that case, this Court should again declare this type of discrimination unconstitutional and enter an injunction prohibiting Secretary Rollins from implementing these race and sex preferences. Farmers, like all other Americans, deserve to be assessed as individuals, not as statistics or as means toward achieving some quota, preference, or balancing based on race or sex.

## PARTIES

5. Plaintiff Adam P. Faust is a white male dairy farmer from Calumet County, near Chilton, Wisconsin. He is a double amputee who milks 70 Holstein cows and farms 200 acres to feed these cows.

6. Defendant Brooke Rollins is the Secretary of Agriculture. She oversees the USDA, including the Farm Service Agency (FSA) and the Natural Resource Conservation Service (NRCS). She is sued in her official capacity.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 2201, and 5 U.S.C. § 702, because this case presents a substantial question of federal law. Specifically, this case alleges that 7 U.S.C. § 9054 (DMC), 7 U.S.C. § 2008b (loan guarantees), 16 U.S.C. § 3839aa-2(d)(4)(A) (EQIP), 7 C.F.R. §§ 1430.402 (DMC), 762.129(b)(1)(v) (loan guarantees), and 1466.3 (EQIP) violate the United States Constitution's guarantee of equal protection of the laws.

8. This Court has authority to issue a declaratory judgment, order injunctive relief, and order other relief that is necessary and proper, pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district, Secretary Rollins maintains one or more offices and employees in the district, a substantial part of the property subject to this action is situated in the district, and Mr. Faust resides in this district.

## STATEMENT OF FACTS

*The Dairy Margin Coverage Program*

10. Created in the 2018 Farm Bill, the DMC Program, administered by USDA's Farm Service Agency, is designed to protect dairy farms from fluctuations in milk prices by "[paying] producers when the difference . . . between the national price of milk and the average cost of feed falls below a certain level." USDA, *Dairy Margin Coverage Program*, January 2025, available at this [link](#). In Wisconsin, nearly 80% of dairy operations are enrolled in the DMC, including Mr. Faust. Wisconsin Farm Bureau Federation, *Wisconsin Advocacy Prompts Swift Action* (February 26, 2024), available at this [link](#).

11. The DMC Program charges a yearly $100 administrative fee, but "socially disadvantaged farmer[s]" are exempt from this fee. 7 U.S.C. § 9054(c)(4).

12. USDA defines "socially disadvantaged farmers" as farmers who are American Indians or Alaskan Natives, Asians or Asian Americans, Blacks or African Americans, Native Hawaiians or other Pacific Islanders, Hispanics, and women. 7 C.F.R. § 1430.402. Because of this definition, every participant is exempt from this fee except for white males.

13. Mr. Faust is not exempt because of his race and sex.

14. Every year, Mr. Faust enrolls in the DMC Program to protect his farm and livelihood. Instead of receiving this exemption and participating in the program for free, he must pay the yearly administrative fee because he is a white male. 7 U.S.C. § 9054(c)(1).

15. Mr. Faust last paid the $100 administrative fee on March 25, 2025.

*The Loan Guarantee Program*

16. The Loan Guarantee Program, run by USDA's Farm Service Agency, has historically helped farmers receive loans and avoid financial loss and hardship by guaranteeing a percentage of these loans. USDA, *Guaranteed Farm Loans,* available at this [link](). The Loan Guarantee Program guarantees up to 95% of a farm loan taken through a commercial lender, which allows farmers to receive higher loans for lower interest rates and shields the applicant from resulting financial harm. 7 U.S.C. § 2008b. Applicants must pay 1.5% of the loan cost to secure this guarantee. USDA, *Guaranteed Loan Program*, available at this [link]().

17. The percentage of the loan guaranteed by the program differs based on the applicant's race and sex. "Socially disadvantaged farmers" receive guarantees that are 95% of the outstanding principal of the loan; white male farmers are only eligible for up to 90% of the loan value. 7 U.S.C. § 2008b; 7 C.F.R. § 762.129(a), 762.129(b)(1)(v); *see also* USDA, *Farm Loan Programs*, Final Rule, 87 FR 13117 (March 9, 2022), available [here]() (rule changes allow socially disadvantaged farmers "to receive a guarantee equal to 95 percent, rather than the otherwise applicable 90 percent guarantee"). Lower guarantee percentages result in higher interest rates, costs, and risks, while decreasing the amount of loan money an applicant can receive.

18. Mr. Faust refinanced his dairy farm in August 2024, and he used the USDA's Loan Guarantee program to obtain an $890,000 loan. He paid the required 1.5% cost for this guarantee, which was $12,015, but he only received a 90% guarantee from the USDA.

19. If Mr. Faust were not white or male, he would have been eligible for up to 95% of the outstanding principal of the loan.

*The Environmental Quality Incentives Program*

20. The Environmental Quality Incentives Program (EQIP) Program incentivizes farmers to participate in soil and water conservation efforts by reimbursing them for the equipment, materials, maintenance, labor, and similar costs stemming from environmentally friendly construction projects. 16 U.S.C. § 3839aa, 3839aa-2(d)(2). The standard reimbursement rate is 75%, but "socially disadvantaged farmers" are reimbursed for up to 90% of these costs. 16 U.S.C. § 3839aa-2(d)(2)(a), 3839aa-2(d)(4)(A).

21. Like the "socially disadvantaged farmers" language in the DMC Program and Loan Guarantee Program regulations, EQIP's "socially disadvantaged farmer" language limits the recipients of maximum reimbursement based on membership in a "group whose members have been subjected to racial or ethnic prejudices without regard to its members' individual qualities." 7 C.F.R. § 1466.3.

22. Contrary to the other programs in this case, EQIP does not deem females at a social disadvantage. The USDA does not explain this difference in definitions.

23. By creating this limitation, EQIP limits white farmers' access to equal reimbursement without regard to the group's members' individual qualities.

24. Mr. Faust entered a contract with an engineering firm to design and install a manure storage system on his farm earlier this year, and he will apply for a

grant and assistance from EQIP in or about November. Because white farmers only receive 75% reimbursement for these projects, Mr. Faust is not eligible for the same amount of aid as a "socially disadvantaged farmer."

*Recent Executive Orders*

25. Recently, President Trump has issued executive orders prohibiting the discrimination present in these three programs. The President's orders required the termination of "all discriminatory and illegal preferences, mandates, policies, programs," and the like in both the private and public sectors. Exec. Order No. 14,151 (Jan. 20, 2025), 90 Fed. Reg. 8339 (Jan. 29, 2025); Exec. Order No. 14,173 (Jan. 21, 2025), 90 Fed. Reg. 8633 (Jan. 31, 2025). Despite the President's recent executive orders, Secretary Rollins has failed to end this discrimination.

26. On April 8, 2025, Mr. Faust wrote a letter to Secretary Rollins warning her of this issue and threatening litigation. Wisconsin Institute for Law & Liberty, Inc., *RE: Ongoing Race & Sex Discrimination by USDA*, April 8, 2025, available at this [link](). Six congressmen wrote a letter as well, reiterating the unconstitutionality of these discriminatory programs. U.S. Congressional Delegation, *Re: Racially Discriminatory Programs at USDA; Dairy Farmer Adam Faust*, May 5, 2025, available at this [link]().

27. Mr. Faust has received no response from Secretary Rollins.

28. These three are not the only ongoing programs at USDA that discriminate based on race and sex. Up to two dozen other discriminatory programs are ongoing and identified in the Wisconsin Institute for Law & Liberty's Roadmap

- 7 -
Case 1:25-cv-00854-BBC    Filed 06/16/25    Page 7 of 13    Document 1

to Equality, which is available at this [link](). Unless USDA stops this ongoing race and sex discrimination, or Congress repeals these laws, farmers like Mr. Faust will continue to bear the burden of litigating against the government in federal court.

## CAUSES OF ACTION

### COUNT 1 - EQUAL PROTECTION VIOLATION
### Dairy Margin Coverage Program's (DMC) Administrative Fee

29. Mr. Faust realleges and incorporates the preceding allegations of the complaint.

30. Discrimination by the government based on a person's race is prohibited by the United States Constitution. *Gibson v. State of Mississippi,* 162 U.S. 565, 591 (1896). Modern case law "treat[s] the equal protection obligations imposed by the Fifth and the Fourteenth Amendments as indistinguishable." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995). "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

31. In *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023), the Supreme Court laid out five independent tests that a racial classification must survive to pass constitutional scrutiny. First, the government must identify one of two compelling governmental interests: "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" or "avoiding imminent and serious risks to human safety in prisons, such as a race riot." *Id*. at 207. Second, the program must be narrowly

tailored and cannot rely on "imprecise," "overbroad," or "underinclusive" racial categories. *Id.* at 216–17. Third, race can never be used as a "negative." *Id.* at 218–19. Fourth, race can never be used as a "stereotype." *Id.* at 220–21. And fifth, all race-based programs must have a "logical end point." *Id.* at 221–22.

32. Additionally, sex-based classifications imposed by the government are analyzed under intermediate scrutiny. *Craig v. Boren*, 429 U.S. 190, 197 (1976). Sex-based classifications must "serve important governmental objectives and must be substantially related to achievement of those objectives," which means that justifications for sex-based discrimination must be "exceedingly persuasive." *Id*; *United States v. Virginia*, 518 U.S. 515, 532-33 (1996).

33. The DMC Program's fee exemption for "socially disadvantaged farmer[s]," detailed in 7 U.S.C. §9054(c)(4), discriminates based on both race and sex through its definition of "socially disadvantaged farmers." The definition of "socially disadvantaged farmers" promulgated in other USDA regulations, which excludes white males, applies to the DMC Program's "socially disadvantaged farmers" phrasing unless Secretary Rollins redefines it. These requirements are also laid out in 7 C.F.R. § 1430.

34. Although Mr. Faust has used this program for years and is otherwise eligible to participate in it, the regulation forces him to pay a fee because he is a white male, while exempting women and certain minorities. 7 C.F.R. §1430.402, 1430.406(e).

- 9 -
Case 1:25-cv-00854-BBC    Filed 06/16/25    Page 9 of 13    Document 1

35. Mr. Faust is harmed by this race and sex-based classification because he must pay the $100 administrative fee to participate in the DMC Program due to his status as a white male. 7 C.F.R. §1430.406(a).

36. Additionally, Mr. Faust has sustained harm by receiving unequal treatment from the government based on race and sex. This is a stigmatic harm, injuring Mr. Faust's dignity.

37. The race and sex-based classifications under 7 U.S.C. §9054(c)(4) and 7 C.F.R. § 1430 are unconstitutional because they violate the United States Constitution's Equal Protection guarantee.

38. The sex-based classification is not substantially related to achieving important governmental objectives.

39. The racial classifications do not meet any of the five standards announced in *SFFA,* let alone all five.

### CLAIM TWO – EQUAL PROTECTION VIOLATION
### Loan Guarantee Program

40. Mr. Faust realleges and incorporates the preceding allegations of the complaint.

41. The Loan Guarantee Program, detailed in 7 U.S.C. § 2008b and operated by the USDA, discriminates based on race and sex by denying Mr. Faust the equal opportunity to receive the highest possible loan guarantee percentage because he is a white male. These requirements are also laid out in 7 C.F.R. § 762.129.

42. Because the FSA requires an applicant to be a "socially disadvantaged farmer" to receive the maximum guarantee, Mr. Faust received a 90% guarantee

instead of a 95% guarantee. 7 C.F.R. § 762.129(b)(1)(v). This deprived Mr. Faust of thousands of dollars that he could have used to enrich his farm, family, and community.

43. Additionally, Mr. Faust has sustained harm by receiving unequal treatment from the government based on race and sex. This is a stigmatic harm, injuring Mr. Faust's dignity.

44. The race and sex-based classifications in 7 U.S.C. § 2008b and 7 C.F.R. § 762.129 are unconstitutional because they violate the Equal Protection guarantee in the United States Constitution. The sex-based classifications in 7 U.S.C. § 2008b and 7 C.F.R. § 762.129 are not substantially related to achieving an important government interest, and the racial classifications in 7 U.S.C. § 2008b and 7 C.F.R. § 762.129 do not meet the standards announced in *SFFA*.

### CLAIM THREE – EQUAL PROTECTION VIOLATION
### Environmental Quality Incentives Program (EQIP)

45. Mr. Faust realleges and incorporates the preceding allegations of the complaint.

46. USDA is depriving Mr. Faust of equal treatment to apply for a grant under EQIP, described in 16 U.S.C. § 3839aa-2(d), solely because of his race. These requirements are also laid out in 7 C.F.R. § 1466.

47. Although Mr. Faust is otherwise eligible to receive maximum reimbursement (90% of the costs) for the construction of his manure storage system under EQIP, Mr. Faust is only eligible for 75% reimbursement because of his race. 16 U.S.C. § 3839aa-2(d)(2), 3839aa-2(d)(4)(A); 7 C.F.R. § 1466.

48. This discrimination will increase the financial hardship suffered by Mr. Faust for constructing an environmentally beneficial structure on his farm.

49. Additionally, Mr. Faust will sustain harm by receiving unequal treatment from the government based on race. This is a stigmatic harm, injuring Mr. Faust's dignity.

50. The racial classifications in 16 U.S.C. § 3839aa-2(d) and 7 C.F.R. § 1466 are unconstitutional because they violate the Equal Protection guarantee in the United States Constitution. The racial classifications do not meet the standards outlined in *SFFA*.

## REQUEST FOR RELIEF

Mr. Faust therefore requests the following relief:

A. Enter a preliminary and permanent injunction preventing Secretary Rollins from applying racial and sex-based classifications when charging the DMC Program's administrative fee.

B. Enter a preliminary and permanent injunction preventing Secretary Rollins from applying racial and sex-based classifications in the Loan Guarantee Program.

C. Enter a preliminary and permanent injunction preventing Secretary Rollins from applying racial classifications when determining the percentage of cost reimbursement for conservation projects under EQIP.

D. Enter a declaratory judgment that the racial and/or sex-based classifications under 7 U.S.C. § 9054 (DMC), 7 U.S.C. § 2008b (loan guarantees), 16

U.S.C. § 3839aa-2(d)(4)(A) (EQIP), 7 C.F.R. §§ 1430.402 (DMC), 762.129(b)(1)(v) (loan guarantees), and 1466.3 (EQIP) are unconstitutional.

E. Award Mr. Faust costs and attorney's fees as allowed by law.

F. Grant Mr. Faust such other relief as the Court deems appropriate.

Dated: June 16, 2025

Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

*Electronically signed by*
*Daniel P. Lennington*
Richard M. Esenberg
Daniel P. Lennington

330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
Phone: (414) 727-9455
Fax: (414) 727-6385

Rick@will-law.org
Dan@will-law.org

Attorneys for Plaintiff